**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **ROW ASSOCIATES, LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**CHERRY TREE DENTAL, LLC and DEERPATH CAPITAL MANAGEMENT, LP,**<br><br>    **Defendants.** |

Civil Case No. 1:25-cv-07612-LGS

So Ordered.

Dated: January 27, 2026
      New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

**STIPULATION CONCERNING DISCOVERY OF ELECTRONICALLY STORED
INFORMATION**

Plaintiff Row Associates, LLC ("Row"), and Defendants Cherry Tree Dental, LLC
("CTD") and Deerpath Capital Management, LP ("Deerpath") (each, a "Party," and together, the
"Parties"), through their respective counsel, enter into this Stipulated ESI Protocol (the "Stipulated
Order") to govern the discovery of electronically stored information ("ESI") in this case as a
supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District
Court for the Southern District of New York, and any other applicable orders and rules.  Nothing
in this order is intended to alter or affect any Party's rights or obligations under any order of this
Court or the presumptive limits on ESI discovery set forth in the Court's Individual Rules II.A.1,
absent further agreement of the Parties or order of the Court.

Accordingly, the Parties and their undersigned counsel hereby stipulate and agree:


I.      **PRODUCTION FORMATS.**

      a.  The Parties agree to produce documents as single TIFF (Tagged Image File Format)

          images, along with corresponding load files containing Bates number beginning,

Bates number ending, family range beginning, family range ending, custodian information, redaction applied and confidentiality designation, if any, with at least the following items of searchable metadata or information about such documents, as required to make these documents reasonably usable: (1) for emails, from, to, cc, bcc, sent date, sent time, subject, and searchable text; (2) for other electronic files (including email attachments), file name, file type or extension, author, created date, created time, modified date, modified time and searchable text; and (3) for all documents (including digitized paper documents), searchable text.

b. Production image file format must be single page color JPG images for color documents or Group IV single black and white TIFF images if the documents do not contain color.

c. Multipage .txt files of OCR/extracted text must be included for each document, named to match the Bates begin number and located in a designated TEXT folder, or similar, within the production volume folder.

d. All files, including natively produced files, must be named with the beginning Bates number of the document.

e. Spreadsheets, CSVs, PowerPoint, media files, or any other file where conversion to image is impossible or where conversion to image would make the document unreviewable, e.g., CAD files, must be produced natively with an accompanying placeholder.

f. To the extent that any native file contains information subject to a claim of privilege or any other applicable protection that requires redactions, the producing Party shall either apply the redactions directly on the native file itself or convert that file to TIFF format and produce it with the necessary redactions. When producing spreadsheets in other than their native formats, the producing Party shall include all hidden rows, columns, cells, worksheets, data, comments, or formulas, as well as any associated headers or footers. Redactions in the native file may not alter the function of the

spreadsheet.

g.  Passwords: known passwords for protected native documents to be provided in plain text format.

h.  Production must include a delimited text file containing, at a minimum, the available data fields listed below and a relative path to the document image from the root of the production media. Concordance-style delimiters are required:

| Value | Character | ASCII Number |
|---|---|---|
| Field / Column | ¶ | 020 |
| Text / Quote | þ | 254 |

i.  Semicolons (;) must be used to separate individual values in multi-value fields.

j.  Date and time formats: fields containing date information shall be formatted in one of the following ways (European date formats must not be used):

YYYY/MM/DD hh:mm:ss
MM/DD/YYYY hh:mm:ss
YYYY-MM-DD hh:mm:ss
MM-DD-YYYY hh:mm:ss

k.  As reasonably required to ensure legibility, each Party reserves the right to request additional files or file classes in native format.

l.  As reasonably required to ensure legibility, each Party reserves the right to request certain files or file classes in higher image resolution.

m.  Absent specific objections, production must use common encryption formats such as encrypted Zip files or BitLocker and be transferred via secure FTP or copied to encrypted physical media, such as a thumb drive, sent via FedEx, UPS or courier.

n.  To the extent necessary, in order to produce documents in a reasonably usable format, Parties shall also produce native files in connection with the production specifications referenced above. This format of production shall be used for files such as spreadsheets, databases and multimedia files where the TIFF images do not

3

adequately communicate the substantive content or context of the file. In the case of any databases and/or files created in proprietary applications, the Parties should discuss whether a standard export of structured data into a commonly used application (i.e., MS Access or SQL) would be appropriate or whether there is some other form of production or reporting that would be more appropriate. When productions are made natively, the Parties should name the file consistent with the first Bates number represented by the document in the production, followed by any applicable confidentiality legend (or abbreviation if the legend makes the file name too long) and produce a slipsheet stating that the document has been produced in native form.

## II.    IDENTIFICATION OF DATA SOURCES, DOCUMENTS, AND ESI

a.  Consistent with the Court's Individual Rules and Procedures, within three (3) days of the entry of this Order, each Party shall identify the custodians whose files and electronically stored information are reasonably likely to contain non-privileged documents responsive to the discovery requests in this action. For each identified custodian, the identifying Party shall also identify the categories of data sources to be searched (e.g., email accounts, messaging platforms, shared drives, document management systems, or personal devices used for work purposes).

b.  Within three (3) days of receipt, the receiving Party shall advise whether it agrees with the identified custodians and data sources or whether it requests to add to or modify them.

c.  The Parties agree to then meet and confer in good faith should they have any disagreements about which custodians' files and/or other document sources should

4

be searched.  No Party shall be obligated to search or collect from additional custodians' files or other sources absent agreement or an order from the Court.

d.  Should a Party identify in the course of discovery discover any additional custodian files and/or document sources that should be searched by the opposing Party, the Parties shall meet and confer as needed to designate any additional custodians and/or document sources.  The Parties may seek assistance from the Court to resolve any disputes regarding the designation of custodians and/or document sources only after attempting to meet and confer in good faith.  Nothing in the foregoing is intended to limit a Party's ability to request that additional custodians' files and/or document sources be searched.

## III.    SEARCH METHODOLOGY

a.  Each Party shall conduct a reasonable and good-faith search for non-privileged documents and ESI responsive to the discovery requests from the files, email accounts, messaging platforms, and document repositories of the custodians and data sources identified pursuant to Section II, within the applicable date ranges.

b.  The Parties acknowledge that, given the scope and timing of discovery in this action, the primary mechanism for identifying responsive ESI shall be custodian- and source-based collection and review.

c.  Search terms used shall be disclosed to the receiving Party after the completion of the producing Party's document production. The use or non-use of any search terms

does not define, limit, or excuse the producing Party's obligation to produce all non-privileged documents responsive to the discovery requests.

d.  The identification of custodians and data sources pursuant to this Section does not limit any Party's obligation to produce all non-privileged documents responsive to the discovery requests, nor shall the failure to identify a particular custodian or data source be used as a basis to withhold responsive ESI that is otherwise within a Party's possession, custody, or control.

e.  If a Party reasonably believes that additional responsive ESI exists within the identified custodians or data sources, the Parties shall promptly meet and confer regarding targeted supplemental search and production.

f.  Discovery requests and the parties' responses thereto shall govern the scope of documents to be produced, subject to the parties' objections and any agreements reached in the parties' meet-and-confer process.

g.  The Parties further agree to meet and confer to the extent that this Order imposes any undue burden or expense on any Party with respect to its response to any particular discovery request.

h.  Nothing in this Order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Party, or a Court ruling, to modify

proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements).

### IV.    DE-DUPLICATION

a. To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall produce only a single, de-duplicated copy of a responsive document. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches; so-called "near duplicates" will not be included within this definition.

b. The producing Party shall use industry standard Md5 or SHA-1 hash comparison methods to globally de-duplicate all files identified for production. Loose Electronic documents shall not be compared to email attachments for de-duplication purposes. Emails shall be deduplicated at the family level (i.e., an email and its attachments shall be considered together for deduplication purposes).

c. Hard copy documents containing handwritten notes shall not be considered as duplicative of any other document.

### V.    EMAIL THREAD ANALYSIS

a. Email thread analysis may be used to reduce the volume of emails reviewed and produced. The produced emails will include all of the responsive information from a thread, including attachments. For example, if an email in a string deviates from the thread such that it contains attachments not included in the most complete thread, that individual email and its attachments will also be produced. If, after

reviewing production of threaded emails, a receiving Party believes it necessary to receive copies of any discrete emails produced within a thread (i.e., for use as exhibits during deposition or at trial), the Parties will meet and confer regarding production of such discrete thread-member Documents, which production will not be unreasonably withheld.

## VI.    PRIVILEGE LOGS

a. If an objection is made that any Party is improperly withholding documents or redacting documents on the basis of the attorney-client privilege, the work-product doctrine or any other applicable privilege, within thirty (30) days of such objection, the Withholding / Designating Party (as defined below) shall produce a privilege log to the opposing Party, which log shall comply with the Party's obligations under Local Civil Rule 26.2 and the comments to that rule.

b. Pursuant to Local Civil Rule 26.2(c), the Parties shall be permitted to provide information regarding claims of privilege by efficient means. The Parties will meet and confer on the fields that will be provided in the privilege log and may use a categorical log or a metadata log, instead of a document-by-document log. Notwithstanding the foregoing, when a categorical or metadata log is used, the Parties may meet and confer about whether to allow the requesting Party to request

a document-by-document log for a limited number or percentage of the logged documents.

c. A Party may not object to a privilege log solely on the basis that it is a categorical log or a metadata log, but may object if the substantive information required by Local Civil Rule 26.2 has not been provided in comprehensible form.

d. Notwithstanding a claim of privilege, any purportedly privileged document containing non-privileged matter must be produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself.

e. Within thirty (30) days of receipt of a privilege log, a Party may identify, in writing, particular documents that it believes require further explanation (the "Receiving" / "Objecting" Party).  Within a reasonable time of such identification, but not more than fourteen (14 days) after the request, the other Party (the "Designating" or "Withholding" Party) must respond to the request for a further explanation.

f. If the Designating / Withholding Party challenges a request for further information related to a document that has been identified as "privileged," the Parties shall meet and confer in an attempt to reach a mutually-agreeable solution. If they cannot reach such an agreement, the matter shall be addressed to the District or Magistrate Judge assigned.

g. The burden of persuasion in any such challenge proceeding shall be on the Party designating the material as "privileged" – i.e. the Designating / Withholding Party. To assist in the prompt resolution of disputed claims of privilege, upon request by

the Court, the Designating / Withholding Party shall submit to the Court, under seal, unredacted copies of all documents for which there is a disputed claim of privilege.

h.  Documents created on or after November 12, 2024 containing privileged and/or work product material relating to the lawsuit or the issues therein do not need to be logged. Pursuant to Federal Rule of Evidence 502(d), any production of a privileged or work product-protected document or ESI, whether inadvertent or otherwise, is not a waiver in the pending case or in any other Federal or State proceeding. To the extent any party to this litigation receives a document which it either (a) reasonably believes may be privileged, or (b) is notified by the producing party that it is privileged, such receiving party shall return or delete all copies of the document. If the receiving party disagrees with the assertion of privilege, it shall sequester the document (and all copies) until a determination is made as to the assertion of privilege.

## VII.  MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

10

SIMS|FUNK, PLC

WOMBLE BOND DICKINSON (US) LLP


By: */s/ Tyler D. Ricker*
    Tyler D. Ricker

3102 West End Avenue, Suite 1100
Nashville, Tennessee 37203
(615) 292-9335
tricker@simsfunk.com

*Counsel for Plaintiff*

By: */s/ Jeffrey J. Golimowski (w/ perm. by TDR)*
    Harry H. Rimm

888 Seventh Avenue
38th Floor
New York, NY 10106
(332) 258-8480
harry.rimm@wbd-us.com

Jeffrey J. Golimowski
WOMBLE BOND DICKINSON US, LLP
8350 Broad Street, Suite 1500
Tysons, Virginia 22102
(703) 394-2275
Jeff.Golimowski@wbd-us.com

*Counsel for Defendants*

11